**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LORN JEFFREY ARNOLD,**

               **Plaintiff,**         **CIVIL ACTION NO. 13-cv-13468**

      **v.**             **DISTRICT JUDGE NANCY G. EDMUNDS**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

             **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lorn Jeffrey Arnold seeks judicial review of Defendant the Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 20). Plaintiff filed a response to Defendant's Motion. (Docket no. 21.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.**    **RECOMMENDATION:**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 17) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 20) should be GRANTED.

## II.     PROCEDURAL HISTORY:

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income with a protective filing date of April 4, 2011, alleging that he had been disabled since November 15, 2009, due to the following severe impairments: irregularities of the patella of the right knee, insulin dependent diabetes mellitus II with peripheral neuropathy, degenerative joint disease of the lumbar spine, and back pain.  (*See* TR 16, 18.)  The Social Security Administration denied benefits.  (TR 16.)  Plaintiff requested a *de novo* hearing, which was held on January 26, 2012, before Administrative Law Judge (ALJ) David A. Mason, Jr., who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 16-26.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff was 53 years old at the time of the administrative hearing and 51 years old at the time of alleged onset.  (TR 25, 40.)  At the time of the hearing, Plaintiff was divorced and lived alone in a single family home.  (TR 41.)  He testified that he had completed high school and had also received special training in heating and cooling.  (TR 48, 150.)  Plaintiff testified that in November 2009, he collapsed while at work because of low blood sugar.  (TR 35-36.)  Plaintiff went on to testify that after he collapsed, he continued to call into work every morning for his work assignments as he had previously done; however, each day he was told that there was no work for him.  (TR 36.)  Although he was never officially terminated, Plaintiff stated that after two weeks went by without

receiving a work assignment, he assumed that he had been let go.  (*Id.*)  Plaintiff also testified that

after he collapsed, and because of problems with his feet and knees, he was afraid to climb a ladder

and get on a roof.  (TR 37.)  As a result of this fear, Plaintiff said he felt that he was unable to

perform his past work.  (TR 36-37.)  Plaintiff also stated that he had not looked for work any place

else or looked for any other types of work.  (TR 37.)

In addition to the problems with his feet and knees, Plaintiff is also diabetic.  (TR 300.)

Plaintiff testified that because of financial problems, he had difficulty affording the medications

necessary to properly regulate his blood sugar levels.  (TR 38-39.)  Plaintiff admittedly did not

always take his medicine as prescribed and had passed out on at least two separate occasions due

to low blood sugar levels.  (TR 36-38, 42, 56.)  Also, as a consequence of passing out while driving,

Plaintiff lost his driver's license in 2007.  (TR 41-42.)  During the hearing, Plaintiff told the ALJ that

he was currently paying for the medication he needed to treat his diabetes by borrowing money from

his mother.  (TR 48.)  Plaintiff also testified that he was not experiencing any side effects from his

current medications.  (TR 44.)

Plaintiff testified that he was currently experiencing pain in his feet, knees, both shoulders,

and his back.  (TR 44, 49.)  When asked by the ALJ, Plaintiff stated that standing for prolonged

periods of time aggravated the problems in his feet and knees.  (TR 45-46.)  He testified that after

an hour of standing he would have to sit down to relieve the pain in his feet.  (TR 48-49.)  Plaintiff

also told the ALJ that his knee pain increased anytime he bent them, and the pain was reduced by

walking.  (TR 46.)  Plaintiff told the ALJ that he could walk approximately a half a block before he

began to have problems with his feet.  (TR 48.)  Plaintiff also testified that he had problems walking

up stairs and needed to use the hand rails; however, going down stairs was not as difficult.  (TR 51.)

Plaintiff testified that his shoulder pain increased whenever there was pressure on them or when he

3

raised his arms above his head.  (TR 45, 46.)  When the ALJ asked how much Plaintiff was able to comfortably lift, he answered ten to fifteen pounds.  (TR 50.)  Plaintiff also told the ALJ that if he sits for longer than fifteen to twenty minutes, his back would bother him.  (TR 49.)  Finally, in addition to the joint pain, Plaintiff stated that he had experienced numbness and lost the dexterity in his hands, which made it difficult to feel and hold things.  (TR 52, 57.)  Plaintiff told the ALJ that when his hands get cold he cannot move them.  (TR 52.)

When asked about his ability to do housework, Plaintiff testified that he could dress and bathe himself, that he did his own cooking, went grocery shopping by himself, washed his own dishes, did laundry, and took out the garbage, all on a regular basis.  (TR 46-47.)  Plaintiff also testified that he regularly swept the floor.  (TR 47.)  Plaintiff further testified that he was able to maintain his home's yardwork by mowing the lawn every two weeks with a push mower and operating a snowblower in the winter.  (TR 47, 60-61.)

When the ALJ asked Plaintiff to describe a normal day, Plaintiff stated that he typically woke up around 9:00 or 10:00 a.m. and watched television all day.  (TR 47-48.)  Plaintiff then testified that on average, he had one to two good days for every bad day.  (TR 58.)  On good days, Plaintiff said that he was able to walk with less pain and had less difficulties with his shoulders, although his hands and feet still bothered him.  (*Id.*)  Plaintiff testified that on bad days, his feet hurt so much that he spent most of the day in bed, only getting up to use the bathroom.  (TR 58-59.)

Plaintiff's attorney asked him if he could perform a job where he had to stand six out of eight hours of a day.  (TR 59.)  Plaintiff responded that he did not think that he would be able to perform that type of job.  (*Id.*)  Plaintiff went on to testify that after standing for an hour, he would need to sit down for ten to fifteen minutes to relieve his foot pain.  (TR 59-60.)  Plaintiff elaborated that after sitting down for ten to fifteen minutes, he would be able to stand again; however, the length of time

4

that he would be able to stand without sitting would grow shorter and shorter after each rest.  (TR 60.)

### B.    Medical Record

Plaintiff (docket no. 17 at 6-9), Defendant (docket no. 20 at 5-11), and the ALJ (TR 21-24) each set out a factual background related to Plaintiff's medical record.  The Court finds that there are no significant inconsistencies between the three accounts; thus, the Court will incorporate them by reference herein.  The undersigned has, however, conducted an independent review of Plaintiff's medical record and will include comments and citations as necessary throughout this Report and Recommendation.

### C.    The Vocational Expert

The ALJ first asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience, who is able to perform a full range of light work with the following limitations:

> [T]his individual is limited to frequent foot controls bilaterally, occasional stooping, crouching, kneeling, crawling; frequent ramps and stairs, no ladders, ropes, or scaffolds, frequently balance, no concentrated exposure to moving machinery or unprotected heights. Also add no cold temperature extremes.

(TR 61.)  When asked, the VE stated that there was work that this hypothetical person could perform, such as work as a cashier or an inspector and that 54,000 of these jobs existed in Southeast Michigan and twice that number existed in the entire state.  (TR 61-62.)

The ALJ then asked the VE to assume that this same individual required a sit/stand option where he or she could alternate between standing for up to one hour at a time and sitting for up to fifteen minutes at a time.  (TR 62.)  The ALJ asked the VE if such a person could work in the identified positions.  (*Id.*)  The VE testified that the Dictionary of Occupational Titles (DOT) does

5

not account for a sit/stand option, but based on her professional experience, such an individual could still perform both jobs, although the number of opportunities would be limited to 13,000.  (TR 62, 63.)  The VE also testified that there would be additional jobs available as a small products assembler, with 6,000 of these jobs existing in Southeast Michigan and twice that number existing in the entire state.  (TR 62.)

The ALJ also asked the VE to assume that the same individual was limited to occasional overhead reaching.  (*Id.*)  The VE testified that an individual with this additional limitation would have the same job opportunities as the individual in hypothetical number two.  (*Id.*)

Finally, the ALJ asked the VE to assume that the individual would be off task for up to 20% of the work week due to pain, and asked whether that would be preclusive of all competitive work. (*Id.*)  The VE stated that being off task 20% of the work week would be preclusive of all competitive work.  (TR 63.)

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014; that he had not engaged in substantial gainful activity since November 15, 2009, the date of his alleged onset; and that he had the following severe impairments: irregularities of the patella of the right knee, insulin dependent diabetes mellitus II with peripheral neuropathy, degenerative joint disease of the lumbar spine, and back pain.  (TR 18.)  The ALJ further found that his impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  The ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except he was limited to:

frequent foot controls bilaterally; occasional stooping, crouching, kneeling, and

6

crawling; frequent ramps and stairs; no ladders, ropes and scaffolds; frequent balancing; no concentrated exposure to moving machinery or unprotected heights; no cold temperature extremes; a sit/stand option where he could stand up to one hour at a time and sit up to 15 minutes at a time alternating; and occasional overhead reaching.

(TR 18-19.)  The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 25.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from November 15, 2009, through the date of the ALJ's decision.  (TR 26.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

8

*Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ's RFC assessment that Plaintiff is capable of a limited range of light work is not supported by substantial evidence; (2) the ALJ "erred in discrediting [P]laintiff's testimony based upon his unsuccessful application for unemployment benefits;" and (3) the ALJ "erred in according any weight at all to the opinions of a single decisionmaker."  (Docket no. 17 at 10-16.)

### 1.    The ALJ's Determination of Plaintiff's RFC

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5.  It is defined as the most, not the least, the claimant can do despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other

9

relevant evidence in the record.  *Id.*  He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis.  *Id.*  The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record.  However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Initially, Plaintiff imparts that the ALJ's RFC assessment that Plaintiff is capable of performing a limited range of light work is a critical finding, because Plaintiff was over the age of 50 on the alleged onset date, and if the ALJ had found that Plaintiff was limited to sedentary work, he would be entitled to a finding of disability as a matter of law.  (Docket no. 17 at 10-11.)  Plaintiff then proceeds to set forth a handful of specific arguments to support his claim that the RFC assessment that Plaintiff is capable of a limited range of light work rather than sedentary work is not supported by substantial evidence.  The Social Security Administration (SSA) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  The SSA's definition of sedentary work is:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a

sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

First, Plaintiff asserts that the ALJ's RFC finding of light work is inconsistent with statements the ALJ made in his written decision that the evidence indicated that Plaintiff was capable of "less than light" work. (Docket no. 17 at 11.) Here, Plaintiff seemingly suggests that the words "less than light" work mean sedentary work. The ALJ's statements to which Plaintiff refers are: "Dr. Gennaoui's physical examination of the claimant is supportive of a less than light residual functional capacity with a sit/stand option, as determined" and "The September 7, 2011, medical record of Kiranmayi Surapaneni, M.D., (Exhibit 11F), is consistent with the limitations set forth by Dr. Gennaoui for a less than light residual functional capacity, (Exhibit 12F)."  (TR 23, 24.) Defendant counters that the ALJ's statements regarding "less than light" work are consistent with the RFC assessment of a limited range of light work. (Docket no. 20 at 17.)  Defendant elaborates that the RFC is "the *most* that an individual can do despite his or her limitations or restrictions" and argues that the ALJ correctly classified Plaintiff's RFC as a limited range of light work rather than an ability to perform more than sedentary work.  (*Id*. at 18 (citing Social Security Ruling 96-8p).) The undersigned agrees with Defendant.

Next, Plaintiff asserts that the ALJ's statement that Plaintiff's testimony supports the RFC does not comport with the ALJ's subsequent acknowledgment that Plaintiff testified that he can lift 10 to 15 pounds. (Docket no. 17 at 11 (citing TR 24).)  Plaintiff reasons that the ability to lift 10 to 15 pounds is consistent with sedentary work, while light work requires the ability to lift 20 pounds on an occasional basis. (*Id*.)  According to the SSA, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

11

tools." 20 C.F.R. § 404.1567(a).  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Plaintiff testified that he can lift 10 to 15 pounds comfortably.  (TR 50.)  When viewed in conjunction with the lifting limitations of sedentary and light work, Plaintiff's testimony indicates that Plaintiff can lift more weight than persons limited to sedentary work - he can lift more than 10 pounds at a time.  Actually, Plaintiff's capability to lift 10 to 15 pounds is quite similar to, if not greater than, the light work limitation of "frequent lifting or carrying of objects weighing up to 10 pounds."  While Plaintiff has not testified to an ability to lift more than 15 pounds, Dr. Habib Gennaoui, M.D. opined that Plaintiff is able to lift and carry 11 to 20 pounds occasionally and up to 10 pounds frequently. (TR 305.) Dr. Gennaoui's opinion mirrors the light work lifting limitations and was given significant weight by the ALJ.  With regard to Plaintiff's lifting capabilities, the RFC assessment of light work is supported by Plaintiff's own testimony and the medical evidence. Plaintiff's argument fails.

In Plaintiff's third argument regarding the ALJ's RFC assessment, Plaintiff argues that the ALJ's finding "that [P]laintiff *could only* stand for an hour at a time, and *could only* sit up to 15 minutes at a time . . . seem[s] to rule out a capacity for light work.  (Docket no. 17 at 11-12 (emphasis added).)  In this same section of argument, Plaintiff also argues that the ALJ's RFC assessment *requires* Plaintiff to stand for one hour at a time followed by a mere 15 minutes of sitting.  (*Id.* at 13 (emphasis added).)  Plaintiff claims that this requirement would cause him to exhaust the maximum number of hours per day of which he is capable of standing (as opined by Dr. Gennaoui) within just five hours of an eight-hour workday.  (*Id.*)  Plaintiff's argument lacks merit as he misinterprets the ALJ's RFC assessment.  The ALJ found that Plaintiff has the residual functional capacity to perform light work that includes "a sit/stand *option* where he *could* stand *up*

12

*to* one hour at a time and sit *up to* 15 minutes at a time alternating." (TR 18-19 (emphasis added).)
A plain reading of the sit/stand option assessed by the ALJ is not as rigid as Plaintiff suggests;
instead, the language used by the ALJ conveys that Plaintiff requires the flexibility to alternate
sitting and standing at work as needed *up to* one hour of standing at a time and 15 minutes of sitting
at a time. It imparts that Plaintiff should not be required to stand for more than an hour or sit for
more than 15 minutes at a time, but it does not limit Plaintiff from doing so as he pleases. By
including the requirement of a sit/stand option in his RFC assessment of Plaintiff, the ALJ indicates
that Plaintiff is not capable of performing a "full or wide range of light work," as defined when it
comes to standing, sitting, and walking, but rather a limited range of light work. The sit/stand option
requirement is consistent with the RFC assessment as a whole that Plaintiff is capable of a limited
range of light work.

Lastly, Plaintiff argues that the ALJ did not properly consider Dr. Gennaoui's opinion of
Plaintiff's durational abilities to sit, stand, and walk. (Docket no. 17 at 12.) Plaintiff seemingly
suggests that if the ALJ had adopted Dr. Gennaoui's opinion in this respect, the RFC assessment
would not support a finding that Plaintiff could work an eight-hour day. (*Id.* at 13.) Plaintiff
interprets Dr. Gennaoui's opinion as that Plaintiff could only sit for four hours out of an eight-hour
work day and could only either stand or walk for an additional three hours total out of an eight-hour
workday. (*Id.* at 12; Docket no. 21 at 4.) Plaintiff claims that Dr. Gennaoui's opinion limits
Plaintiff to an ability to work only seven hours out of an eight-hour workday. (Docket no. 17 at 12.)
Defendant contends that Plaintiff has misstated Dr. Gennaoui's opinion. (Docket no. 20 at 19.)
Defendant argues that Dr. Gennaoui did not limit Plaintiff to a combined total of three hours of
standing and walking, but actually opined that Plaintiff is capable of standing for three hours in a
workday and walking for three hours in a workday, meaning that Plaintiff could sit, stand, walk, and

13

work for at least eight hours per day.  (Docket no. 20 at 19-20.)

Dr. Gennaoui personally examined and evaluated Plaintiff on February 16, 2012.  Based on this examination, Dr. Gennaoui provided his opinion of Plaintiff's durational abilities to sit, stand, and walk on a standard "Medical Source Statement" form.  (TR 306.)  The form is set up in a grid format where the Sit, Stand, and Walk categories are positioned vertically in a numbered list as A. Sit, B. Stand, and C. Walk.  To the right of each category are the durational limits, which include a blank line for minutes and eight separate check boxes for the number of hours.  First, Dr. Gennaoui opined that Plaintiff is able to sit for one hour at a time without interruption, stand for 30 minutes at a time without interruption, and walk for 30 minutes at a time without interruption.  Next, Dr. Gennaoui opined that, in an eight-hour workday, Plaintiff is able to sit for a total of four hours, stand for a total of three hours, and walk for a total of three hours.  Plaintiff claims that the form does not clearly separate stand and walk into different categories.  (Docket no. 21 at 4.)  Plaintiff is incorrect; as noted above, sit, stand, and walk are each specifically separated in a lettered list.  The form clearly indicates that Dr. Gennaoui opined that Plaintiff could stand for a total of three hours in an eight-hour workday *and also* walk for a total of three hours.  There are no handwritten marks on the form to suggest otherwise.  When combined with Plaintiff's ability to sit for a total of four hours, Dr. Gennaoui opined that Plaintiff can sit, stand, or walk for a total of ten hours in an eight-hour workday.

The ALJ summarized and relied upon Dr. Gennaoui's entire February 16, 2012 opinion extensively in his decision and assigned it significant weight.  (TR 22-24.)  With regard to Dr. Gennaoui's opinion on Plaintiff's durational abilities to sit, stand, and walk, the ALJ stated:

> Dr. Gennaoui reported that the claimant may sit for up to one hour at a time without interruption; stand for 30 minutes at one time without interruption and walk up to 30 minutes at one time without interruption; sit for a total of up to four hours total in an

eight hour workday; stand for a total of up to three hours in an eight hour workday; and walk up to a total of three hours in an eight hour work day due to back and knee pain.

(TR 22.)  The ALJ properly evaluated Dr. Gennaoui's opinion, assigned it significant weight, and found it to be "supportive a less than light residual functional capacity with a sit/stand option." Plaintiff's argument regarding Dr. Gennaoui's opinion fails.

The ALJ's RFC assessment that Plaintiff is capable of performing a limited range of light work is supported by substantial evidence.  Each of Plaintiff's arguments to the contrary, discussed above, fail.  Thus, Plaintiff's Motion should be denied with regard to this issue.

### 2.    The ALJ's Assessment of Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But Credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96–7p.  "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not

15

reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony based upon his unsuccessful application for unemployment benefits.  (Docket no. 17 at 14.)  In evaluating Plaintiff's credibility, the ALJ discussed Plaintiff's application for unemployment as follows:

> In terms of the claimant's alleged disability, he testified that he applied for unemployment when he stopped working but was denied.  When one files for such a benefit, there is a presumption that the claimant is ready, willing and available for employment.

(TR 21.)  Plaintiff contends that while the *receipt* of unemployment benefits may suggest that the claimant is ready, willing, and available for employment, that presumption should not be applied to an *application* for unemployment benefits, especially an unsuccessful application where it is not known why the benefits were denied.  (Docket no. 17 at 14.)  Plaintiff's counsel speculates that Plaintiff's application for benefits could have been denied because Plaintiff acknowledged that he was not ready, willing, or available for employment or because the unemployment agency so concluded.  (*Id*.)

The Sixth Circuit has held that "[*a*]pplications for unemployment and disability benefits are

16

inherently inconsistent," as "[t]here is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work." *Workman v. Commissioner of Social Security*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (emphasis added) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983) and *Bowden v. Comm'r of Soc. Sec.*, No. 97–1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999)).   While an *application for* or the receipt of employment benefits is not by itself dispositive of a claimant's credibility, it may appropriately be considered as a factor in making such an assessment.   *Duncan v. Comm'r of Soc. Sec.*, No. 08-11067, 2009 WL 2843918, at *1 (E.D. Mich. Aug. 31, 2009) (Rosen, J.) (emphasis added) (citing cases).

Here, in addition to considering Plaintiff's application for unemployment benefits, the ALJ also took numerous other factors into account when assessing Plaintiff's credibility.   The ALJ specifically discussed the inconsistency of Plaintiff's alleged symptoms with Plaintiff's daily activities and the fact that, despite his alleged disabling pain, Plaintiff was able to travel from Michigan to Texas by bus eight months before his hearing.   (TR 21, 24.)   He also noted that a field examiner was unable to detect that Plaintiff had physical impairments during an in-person interview on April 4, 2011.   (TR 21.)   The ALJ also considered that Plaintiff had not consistently taken his prescribed medications, claiming that he had not been able to afford them despite the fact that he was regularly spending $20 to $30 per week on alcohol and was borrowing money from his mother. (TR 21.)   Thus, the ALJ did not err by considering Plaintiff's application for unemployment benefits in determining Plaintiff's credibility, even where it is unknown why his application was denied, as his decision is sufficiently and substantially supported by a myriad of other factors.

### 3.      The ALJ's Assessment of the Single Decisionmaker (SDM)

17

Plaintiff's final argument is that any reliance on a single decisionmaker's opinions constitutes reversible error and that the ALJ committed such an error by according weight to the opinions of the SDM in this matter. (Docket no. 17 at 15-16.) The single decisionmaker model is an experimental modification to the disability determination process used by the Social Security Administration in which a State agency employee or Federal employee is responsible for making the initial disability determination "after any appropriate consultation with a medical or psychological consultant." 20 C.F.R. § 404.906. Any findings made by an SDM are not to be used as opinion evidence at the appellate level, since SDMs, as laypersons, are not acceptable medical sources or non-medical sources of opinion evidence under 20 C.F.R. § 404.1513, § 404.1527(a)(2), or SSR 06–[0]3p. *See White v. Comm'r of Soc. Sec.*, No. 12-cv-12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013) *and Maynard v. Astrue,* No. 11–12221, 2012 WL 5471150, at *6 (E.D. Mich. Nov. 9, 2012). Notably, the SSA's Program Operations Manual advises that it must be clear to the appeal-level adjudicator whether the Physical Residual Functional Capacity form was completed by an SDM or a medical consultant because "SDM-completed forms are not opinion evidence at the appeal levels." POMS DI 24510.050C.V. "Accordingly, under the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination. *White,* 2013 WL 4414727, at *8.

Nevertheless, an ALJ's discussion of an SDM's assessment does not necessarily constitute reversible error. *White,* at *9-10. In *White*, the ALJ gave "little weight" to the SDM's conclusion that the claimant could perform work at the light exertional level and declined to adopt the SDM's finding that the claimant was limited in his ability to reach in all directions as it was inconsistent with the medical evidence. *Id*. at 9. The court held that the ALJ's discussion of the SDM's opinion was harmless and did not require reversal, reasoning that the ALJ relied minimally, if at all, on the

18

SDM's opinion in forming the claimant's RFC. *Id*. at 10.

Plaintiff relies the following cases to support his position: *Hensley v. Comm'r of Soc. Sec.*, *Dorrough v. Comm'r of Soc. Sec.*, and *Maynard v. Astrue.* In *Hensley*, the court remanded where the ALJ "gave great weight, and cited extensively" to the SDM's opinion. No. 10-CV-11960, 2011 WL 4406359, at *1 (E.D. Mich. Sept. 22, 2011). In *Dorrough*, the court, relying on *Hensley*, also remanded where the ALJ mistakenly believed the SDM to be a physician and assigned the SDM's "assessment the weight befitting the opinion of a medical expert." No. 11-12447, 2012 WL 4513621, at *2 (E.D. Mich. Oct. 2, 2012). Finally, in *Maynard*, the court remanded where, although the ALJ recognized that he was not bound by the SDM's assessment, he "relied on the RFC and expressly adopted it as a state agency medical opinion." 2012 WL 5471150, at *7.

The facts of the instant matter are very different than those in *Hensley*, *Dorrough*, and *Maynard*; instead they comport closely with the facts in *White*, discussed *supra*. Here, the ALJ stated that the single decisionmaker's opinions were not given great weight because there was a subsequent medical opinion that the SDM did not consider. (TR 21.) In fact, the ALJ's decision does not indicate that any weight at all was given to the single decisionmaker's assessment. The only opinion that the ALJ credited was Dr. Gennaoui's, which he discussed extensively and assigned significant weight. (TR 22-24.) On this record then, the undersigned finds that the ALJ's reliance on the single decisionmaker's opinion, if any, was harmless. Remand on this basis, therefore, is not warranted.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 17) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 20) should be GRANTED.

19

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 13, 2015              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 13, 2015          s/ Lisa C. Bartlett_____
                                 Case Manager